# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| TRAVON DAMARCO MITCHELL, | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) Case No. 1:15-cv-78 SNLJ |
| ZACH ALBRIGHT, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Travon Mitchell brought this action against the City of Sikeston, Missouri, and two Sikeston police officers, defendants Zach Albright and Franklin Adams. This matter is before the Court on the City of Sikeston and Albright's motions for summary judgment (#48, #31). The matter has been fully briefed and is now ripe for disposition.

**I.    Factual Background[1]**

On April 19, 2014, at 12:05 a.m., Sikeston police officer and nonparty Justin James received a call about suspicious activity reported by an individual who stated he observed three people in a red car with Missouri license plate number DL9A8U. Officer James drove to the location of the reported suspicious activity and observed a red Cobalt with Missouri license plate DL9A8U turning and heading north at high speed. James was at

---

[1] The following facts are undisputed unless otherwise indicated.

1

the time heading southbound, so he made a U-turn and turned on his lights and sirens. Plaintiff was one of two passengers in the red Cobalt with Missouri plate DL9A8U, which was being driven by Aaron Allen. Upon seeing Officer James's police vehicle lights, Allen started driving faster, fleeing Officer James's vehicle. Allen took the officer on a high speed chase through a neighborhood, running stop signs and eventually hitting the brakes to avoid another police vehicle that was blocking the road. That other police vehicle was being driven by defendant Sikeston Police Officer Zach Albright. All three occupants of the red Cobalt took off running from the vehicle. Officer James ran after an individual who ran toward apartment buildings nearby; defendant Officer Franklin Adams drove toward the apartments and stopped where Officer James was located near the apartments. Officer James lost sight of the individual among the apartment buildings. Defendant Adams deployed his police dog, Levi, to try to track the individual whom Officer James had been pursuing.

Levi tracked for about 100 to 150 feet and stopped at the door of one of the buildings, but defendant Adams and Levi had to leave that location to assist the search for the individual defendant Albright had been pursuing. Officer James stayed at the location where Levi had led him, but he later returned to the red Cobalt, where he located a .40 caliber handgun loaded with .40 caliber hollow point ammunition.

Meanwhile, defendant Albright pursued plaintiff, who was wearing black jeans and a black hoodie, through yards and fields and then through an alleyway. At some point plaintiff decided to turn around. He was in the backyard at 202 West Gladys and headed

toward the street when he saw several police officers on West Gladys, so he slid between the house and a bush that was located in the side yard. Albright lost sight of plaintiff and called for Adams and Levi.

Defendant Adams deployed Levi from the patrol car. At that time, Adams had heard that a handgun had been found in the red Cobalt. Adams, Albright, and Levi proceeded towards the residence next to which plaintiff was hiding. At the rear of the residence, Levi started to track one of the individuals who had fled from the Cobalt. Levi tracked the individual through several backyards before doubling back to the residence at 202 West Gladys where plaintiff was hiding. Adams and Levi walked past plaintiff behind his bush twice. The dog went toward the bush, sniffed, and stood straight up. Adams said "we got them. We found them." Plaintiff says that he rolled over onto his stomach beside the bush and that he heard Adams say something to the dog and that the dog started growling. Plaintiff says Adams commanded "Packen," which is the German language command for the dog to bite. Levi bit plaintiff on his upper right thigh and dragged him two or three feet to the middle of the sideyard.

The parties dispute what happened next. Plaintiff says that Levi bit him for four to five minutes while the police officers watched and did nothing to stop it. Defendants say that plaintiff hit Levi on the nose, that Adams ordered Levi to stop, and that the dog released plaintiff after 10-15 seconds.

Officers helped plaintiff get up and had paramedics examine the plaintiff's injuries. Paramedics told the officers that plaintiff needed to go to the hospital, and an ambulance

3

took him to the hospital, where plaintiff received stitches and other treatment for his wounds.

Plaintiff was charged with resisting arrest and assaulting a police dog. He pleaded guilty to resisting arrest but the assault on the police dog charge was dismissed.

Plaintiff filed this action under 42 U.S.C. Section 1983 claiming in Count I that defendants Albright and Adams violated his Fourth Amendment rights by using excessive force and failing to intervene to prevent the use of excessive force against him, and in Count II that the City of Sikeston showed deliberate indifference to the rights of others in adopting unlawful customs or policies and failing to train its officers adequately.

Defendants Albright and the City of Sikeston have moved for summary judgment on the Counts against them.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

## III. Discussion

### A. Defendant Zach Albright

Plaintiff claims that defendant Albright used excessive force against plaintiff and that he failed to intervene to prevent the use of excessive force against plaintiff.

#### 1. Excessive Force

Section 1983 is a remedial statute allowing for a person acting under color of state law to be held liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The Fourth Amendment to the United States Constitution prohibits the use of excessive force during the seizure of a free citizen. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). Plaintiff here claims that defendant Albright used excessive force through the use of the police canine Levi in apprehending plaintiff.

It appears undisputed that defendant Albright --- as opposed to defendant Adams --- had no control over police canine Levi and was therefore not responsible for Levi's biting and dragging plaintiff. Plaintiff does not address this matter in his response memorandum, and thus summary judgment will be granted to defendant Albright on this aspect of Count I.

## 2. Failure to Intervene

It is "clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). An officer can be liable for failing to act "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009). However, the plaintiff must show that the "officer observed or had reason to know that excessive force would be or was being used." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015); *see also Grider v. Bowling*, 785 F.3d 1248, 1253 (8th Cir. 2015).

Defendant Albright argues that he was providing cover for defendant Adams, and that Adams was solely in charge of his dog, Levi. He states that it was dark and plaintiff was behind a bush, so he argues that he could not have known that excessive force was being used. Although it is true Albright did not give the order for Levi to attack plaintiff, the facts regarding what Albright knew or how much time he had to act are disputed. Plaintiff says there was light from houses and street lamps and police flashlights;

moreover, it is undisputed that the dog dragged plaintiff from behind the bush. Defendant Albright suggests this case is like that in *Grider*, in which the plaintiff claims a police officer failed to intervene when another officer kicked an arrestee in the head. *See* 785 F.3d at 1252. In that case, there was no evidence that the arresting officer was aware of the kick before it occurred or that he had opportunity to "take action to deescalate the situation." *Id.* Defendant Albright says that, likewise, even if plaintiff could establish that use of the dog constituted excessive force, he did not have the ability to intervene in time to prevent any misconduct.

Plaintiff submits, however, that he was bitten by the dog for four to five minutes. Defendants dispute that number and say that the episode went on for perhaps 10-15 seconds. Viewing the facts in a light most favorable to the nonmovant plaintiff, if indeed the attack went on for four to five minutes while plaintiff did nothing, then defendant Albright would have had ample time to tell defendant Adams to call off his dog and "deescalate the situation." *Id.* A question of fact exists, then, as to this matter, and summary judgment must be denied.

## B. Defendant City of Sikeston

Plaintiff's claims against the City of Sikeston in Count II include the following:

- Sikeston had a custom or policy of arresting, stopping, and using excessive force against young male African Americans without probable cause.
- Sikeston used inadequate hiring and training practices and policies that resulted in the above-described problems.
- Sikeston failed to train officers to treat young male African Americans the same as others, and it used inadequate hiring policies and practices to hire officers who would treat young male African Americans the same as others.

A "municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A "policy" is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* A "custom" is an unofficial practice characterized by a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." *Id.* To prevail on his § 1983 claims, in addition to identifying an unconstitutional policy or custom, plaintiff must also show that the policy or custom was the "moving force" that caused the alleged injury. *Id.*; *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and

the deprivation of federal rights." *Brown*, 520 U.S. at 404. In addition, "in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005).

Sikeston has moved for summary judgment on each of the claims against it.

### 1. Policy or Custom of Stopping Individuals Based on Race

The "seizure" of a person occurs when an officer restrains the liberty of an individual through "physical force or show of authority." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Under the Fourth Amendment, "both investigative stops and arrests are 'seizures,' but an investigative stop must be supported by reasonable, articulable suspicion that criminal activity may be afoot, whereas an arrest must be supported by probable cause." *United States v. Miller*, 974 F.2d 953, 956 (8th Cir. 1992). "Where a police officer has reasonable suspicion that criminal activity may be afoot, the officer may briefly stop an individual and make reasonable inquiries aimed at confirming or dispelling the suspicion." *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008).

Here, plaintiff claims that the City of Sikeston had a custom of stopping individuals based on their race and without reasonable suspicion. The Court must look to the circumstances of the "stop" in this case. When Officer James saw the red Cobalt matching the description provided in the call, he made a U-Turn. Plaintiff testified that the police car turned its lights on as well. Assuming that Officer James's act of performing a U-Turn on a public street after seeing the Cobalt constituted a stop, Sikeston contends that James had reasonable suspicion to do so. The red Cobalt matched the description

9

(including license plate number) of the vehicle that reportedly contained individuals wearing masks. Officer James testified that he knows individuals frequently wear masks or other head coverings to conceal their identities when they commit a crime, and the fact that it was after midnight added to his suspicions. Officer James believed that the individuals in the Cobalt may have been engaging in criminal activity or were about to do so based on the information he had and his own training and experiences.

The defendant also contends that Officer James had reasonable suspicion to conduct an investigative stop after the driver of the Cobalt attempted to flee upon seeing Officer James turn around and (perhaps) turn on his light.

Plaintiff does not appear to dispute that Officer James received a call about individuals wearing masks inside the Cobalt. Although plaintiff does dispute that the plaintiff and his companions were actually wearing masks, plaintiff does not dispute that Officer James believed (based on the report) they were wearing masks.

As a result, any attempt by Officer James to perform an investigative stop on the Cobalt did not violate plaintiff's Fourth Amendment rights; to the extent an investigative stop occurred, it was based on reasonable suspicion and not on the race of the individuals in the vehicle. In fact, Officer James did not even know the race of the individuals in the car. Plaintiff suggests that a question of fact exists by noting that Sikeston stops black

individuals for traffic offenses two times more frequently than whites,[2] but general racial profiling data cannot create an issue of fact regarding whether plaintiff's constitutional rights were violated. *See Ballard v. Heineman*, 548 F.3d 1132, 1136 (8th Cir. 2008).

Because there is no individual liability on the underlying substantive claim, Sikeston is entitled to summary judgment on plaintiff's claim regarding an unconstitutional policy or custom of stopping individuals based on race and without reasonable suspicion. *See McCoy*, 411 F.3d at 922.

### 2. Policy or Custom of Arresting Individuals Based on Race

The Fourth Amendment protects an individual's "right to be free from arrest without probable cause." *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999). "Probable cause . . . means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). As with plaintiff's claim regarding an investigatory stop, Sikeston cannot be held liable on plaintiff's claim that it had an unconstitutional policy or custom of arresting individuals without probable cause based on race unless plaintiff himself was subjected to an unconstitutional arrest. *See McCoy*, 411 F.3d at 922-23. The officers had probable cause to support that plaintiff had committed the crime of resisting a lawful stop and/or an arrest by fleeing the police --- in

---

[2] The data cited by plaintiff is from plaintiff's counsel's affidavit filed in support of plaintiff's opposition memorandum. The affidavit is the subject of a motion to strike, addressed below.

11

fact, plaintiff pleaded guilty to that very offense. Plaintiff appears to refute that plaintiff was lawfully arrested by noting that Sikeston arrests black individuals for non-vehicular offenses 3.2 times more frequently than whites,[3] but, again, general racial profiling data cannot create an issue of fact regarding whether plaintiff's constitutional rights were violated. *See Ballard*, 548 F.3d at 1136. As a result, Sikeston is entitled to summary judgment on this aspect of plaintiff's claim.

### 3. Policy or Custom of Using Excessive Force on African Americans

The focus on plaintiff's case is his claim that excessive force was used on him during his apprehension through the use of the police dog Levi. Plaintiff claims that Sikeston faces municipal liability for that claim because it had a policy or custom of using excessive force on African Americans. Sikeston's policies on use of force, including the use of police canines during apprehension and arrests of individuals, are racially neutral and facially constitutional. Plaintiff does not dispute this fact in his response, nor does plaintiff set forth evidence demonstrating that Sikeston had an unconstitutional policy regarding the use of canine units or the use of force in general.

As for whether Sikeston had an unwritten "custom" of using excessive force on minorities, plaintiff appears to argue that because the officers violated Sikeston's written policies regarding use of force and were not reprimanded as a result of those violations, that there exists an issue of fact regarding whether such a custom exists. The "policy" at issue here involves the requirement that the canine officer issue a warning before turning a

---

[3] The data cited by plaintiff is from plaintiff's counsel's affidavit filed in support of plaintiff's opposition memorandum. The affidavit is the subject of a motion to strike, addressed below.

dog loose on a suspect. It is undisputed that no warning was offered in this case. It is not clear whether there was a violation of Sikeston's written policies, but it is clear that the officers were not reprimanded for doing so if it was indeed a violation. Regardless, in order to prove a municipal custom exists, plaintiff must show (1) the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" Sikeston employees, (2) deliberate indifference to or tacit authorization of such conduct by Sikeston's policymaking officials after notice to the officials of that misconduct; (3) that the custom was the moving force behind the constitutional violation. *Mettler*, 165 F.3d at 1204. Here, plaintiff shows only one arguable instance of potentially unconstitutional misconduct. Although plaintiff notes that defendant Albright was terminated from his position for using excessive force while arresting a white suspect, plaintiff does not provide any evidence of a widespread, persistent pattern of using excessive force on black individuals. Plaintiff's suggestion that the department was willing to look the other way when excessive force was used on black arrestees could be probative in the face of other similar evidence, *see id.* at 1205, but a "single incident normally does not suffice to prove the existence of a municipal custom." *Id.*; *see also Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996).

As a result, summary judgment must be granted to Sikeston on this claim. *See, e.g.*, *id.* (granting summary judgment to county where plaintiff failed to show a pattern of unconstitutional conduct).

### 4. Failure to Train

Plaintiff contends that Sikeston is liable for failing to properly train its police officers. However, plaintiff has offered no evidence to support this claim. Because

Sikeston is entitled to summary judgment on plaintiff's claims regarding investigative stops and arrests, Sikeston is likewise entitled to summary judgment on plaintiff's claim that it failed to adequately train its officers with respect to those matters. *See Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (noting that, to maintain an action or training liability, plaintiff must show underlying constitutional violations).

With respect to plaintiff's claim that Sikeston failed to train its officers properly with respect to use of force, plaintiff states that the

> Police Chief terminated Officer Albright for using excessive force when arresting a white suspect, but failed to reprimand him for his role in using excessive force by permitting the police dog to bite and maul plaintiff repeatedly. There is evidence from which a jury could find that Sikeston's hiring and training policies resulted in these contrasting decisions made by a policymaking officer, Police Chief Juden, who ratified and condoned the use of excess force against plaintiff.

(#56 at 6.) Plaintiff fails to articulate what this "evidence" is, and it is undisputed that Sikeston requires its officers to undergo extensive training and that additional, continuous training is required of Sikeston's canine officers. Summary judgment will be granted to Sikeston on this claim.

### 5. Inadequate Hiring Practices

Finally, plaintiff suggests that Sikeston's inadequate hiring practices "resulted in the contrasting decisions" described above and also that the city's "hiring policies were a cause of plaintiff's dog bite injuries, which resulted from the use of excessive force in violation of Sikeston's written policies." (#56 at 6.) Plaintiff goes on to observe that only 6.7 % of Sikeston's police force is black. Plaintiff fails to connect this information to

14

hiring practices resulting in constitutional violations. Demographical information alone does not substitute for legal argument. It is undisputed that the pre-employment investigations into the backgrounds of officers involved in this matter did not find any prior claims or complaints relevant to this case. Plaintiff also has not produced evidence supporting that any prior claims or complaints against these officers existed. Because no issue of fact exists regarding defendant's hiring practices, summary judgment will be granted to Sikeston on this claim as well.

**IV.    Motion to Strike**

Finally, defendant City of Sikeston moves to strike the affidavit of plaintiff's attorney David Duree (#59). The affidavit was filed in support of plaintiff's response to Sikeston's motion for summary judgment and contains mathematical calculations performed on racial profiling statistics and interpretations of the results of those calculations. Having already determined that the statistical data conveyed in the affidavit is irrelevant, there is no need to address defendant's motion to strike.

Accordingly,

**IT IS HEREBY ORDERED** that defendant City of Sikeston's motion for summary judgment (#48) is GRANTED.

**IT IS FURTHER ORDERED** that defendant Zach Albright's motion for summary judgment (#31) is DENIED in part and GRANTED in part, as described herein.

**IT IS FINALLY ORDERED** that defendant City of Sikeston's motion to strike (#59) is DENIED as moot.

Dated this   29th   day of August, 2016.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE